IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  05-cv-02463-WDM-MEH

DENVER FIRST CHURCH OF THE NAZARENE,

      Plaintiff,

vs.

CHERRY HILLS VILLAGE, a Colorado home rule town, *et al.*,

      Defendants.

_____

### ORDER ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER
_____

      Defendants have filed a Motion for Protective Order (Docket #22) ("Motion").  The matter is briefed, and oral argument would not materially assist the Court in adjudicating this Motion.  For the reasons stated below, the Court **denies** the Motion.

## I.      Facts

      In this suit, Plaintiff is a church that submitted two separate applications for expansion to the Defendant Cherry Hills Village ("the City").   The requests included construction of a classroom/office/gymnasium addition to the existing sanctuary building, as well as re-zoning five lots designated as residential (to allow construction of a parking lot) and vacation of a stretch of road known as South Monroe Street.  Both applications were denied, in reliance on the City's zoning laws.  In denying their applications, Plaintiff alleges that the City (specifically, the Planning and Zoning Commission and the City Council) violated the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* (RLUIPA), as well as Plaintiff's constitutional rights.   Further, Plaintiff claims that enactment of Ordinance 13, series 2000 ("the Ordinance") in August of 2000 also violated

its statutory and constitutional rights.

The present dispute concerns Plaintiff's intent to take the depositions of eight City Council members, a representative of the Planning and Zoning Commission, and a representative of the Board of Adjustment. The Defendants contend that these persons were acting in their legislative and/or quasi-judicial capacities when enacting the Ordinance and deliberating/voting on Plaintiff's applications and, therefore, are immune from such discovery efforts. Plaintiff contends that the Ordinance changed the zoning requirements relating to parking (the older version requiring one parking space for every eight seats for auditoriums, churches or other places of assembly, the newer version reducing that to one parking space for every three fixed seats) with the Plaintiff and other churches in mind, because the Ordinance applies to no other facilities in the entire city.

## II.     Discussion

### A.       Standards for Obtaining a Protective Order

Rule 26(c) lists eight kinds of protective orders that may be made upon a showing of good cause. The kind of protective order sought here would arguably fall under (c)(1) ("that the discovery not be had") or (c)(4) ("that certain matters not be inquired into"). Further, under subsection (c) the Court may make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Clearly, the Court has the authority to enter the type of order sought by Defendants, so long as they have provided sufficient grounds.

As noted by Wright & Miller, rarely do counsel find it necessary to resort to motions for a protective order with regard to written discovery, and "[i]t is even more difficult to show grounds for ordering that discovery not be had when it is a deposition that is sought, and most requests of this kind are denied." C. WRIGHT & A. MILLER, 8 FED. PRAC. & PROC. 2D § 2037.

2

Of course, the scope of discovery under the Federal Rules of Civil Procedure is broad. "Parties may obtain discovery of any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." Fed. R. Civ. P. 26(b). The Supreme Court has held that discovery is designed to help define and clarify the issues. *Hickman v. Taylor,* 329 U.S. 495, 501 (1947).

### B.      Relevance

#### 1.      Depositions of City Council Members Concerning Enactment of the Ordinance

It is true that the city council members are absolutely immune from suit *for money damages* concerning their enactment of the Ordinance, which was without doubt a legislative action. With both absolute and qualified immunity, the protections are from *suit,* not *liability*; therefore, persons entitled to such immunities are entitled to avoid the burdens of discovery. *E.g., Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001). However, Plaintiff is correct that "neither qualified *nor absolute immunity* precludes prospective *injunctive relief* except in rare circumstances." *Lemmons v. Law Firm of Morris & Morris*, 39 F.3d 264, 267 (10th Cir. 1994) (emphasis in original). *See State Bd. of Chiropractic Examiners v. Stjernholm*, 935 P.2d 959, (Colo. 1997) ("Stjernholm cannot obtain damages against the Board members because they are entitled absolute immunity for their quasi-judicial actions and only injunctive relief against them is a possibility."). Even judges do not enjoy absolute immunity from actions seeking injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 536-37 (1984). In this action, Plaintiff seeks both "money damages" (Complaint, Request for Relief at 17 ¶d) and declaratory/injunctive relief (Complaint, Request for Relief at 17 ¶¶a-c). Thus, it is clear to this Court that neither absolute nor qualified immunity bar

automatically, as a matter of law, Plaintiff's claims for injunctive relief.  However, that is not the end of the inquiry.

Regardless of the immunities and privileges argued by the parties, only relevant evidence is subject to discovery.[1]  Plaintiff argues that motive is relevant to this lawsuit, because council members may have acted with an improper discriminatory intent.  Generally, the motives of an individual council members in *enacting an ordinance* has no bearing on whether the ordinance in fact infringes the constitutional rights of another.  Justice Scalia wrote on this issue regarding claims brought under the First Amendment:

> [The language of the First Amendment] does not put us into the business of invalidating laws by reason of the evil motives of their authors.  Had the Hialeah City Council set out resolutely to suppress the practices of Santeria, but ineptly adopted ordinances that failed to do so, I do not see how those laws could be said to "prohibi[t] the free exercise" of religion.  Nor, in my view, does it matter that a legislature consists entirely of the pure-hearted, if the law it enacts in fact singles out a religious practice for special burdens.

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 558-59 (1993) (Scalia, J., concurring in part and concurring in the judgment).  *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 279 (2000) ("[T]his Court will not strike down an otherwise constitutional statute on the basis of an illicit motive."); *United States v. O'Brien*, 391 U.S. 367, 382-83 (1968); *Heideman v. Mann*, 165 Fed. Appx. 627, 633 n.2 (10th Cir. Feb. 2, 2006) (evidence of impermissible motive of city council member is insufficient to overcome presumption of regularity in context of suppression of free speech); *Tracy v. City of Boulder*, 635 P.2d 907, 910 (Colo. Ct. App. 1981) (same).

Nevertheless, in some instances, the motives of the council members may be at issue.

---

[1]*See* 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2008, at 41 (2006) ("Perhaps the single most important word in Rule 26(b)(1) is 'relevant' for it is only relevant matter that may be the subject of discovery.").

Response at 6-9 (citing cases). While this Court is unwilling to allow a conclusory allegation of improper motive to automatically make the motives of the council members relevant to all constitutional claims (particularly since the majority of Plaintiff's constitutional claims focus solely on the burden imposed on Plaintiff), the Court has found at least two instances in which motive is relevant, both of which involve government action in the context of religion: (1) claims brought under the Establishment Clause; and (2) claims brought under Section (b)(2) of RLUIPA. In this first instance, the Supreme Court has stated, "When the government acts with the ostensible and predominant purpose of advancing religion, it violates that central Establishment Clause value of official religious neutrality, there being no neutrality when the government's ostensible object is to take sides." *McCreary County v. ACLU*, __ U.S. __, 125 S. Ct. 2722, 2733 (2005). Thus, the motives of the government actors are directly at issue in those cases.

In the second instance, RLUIPA expressly states, "No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2). The Seventh Circuit has compared this provision, and the substantial burden test in RLUIPA, to that of an employment discrimination claim, whereby a plaintiff may either show intentional discrimination or establish an inference of discrimination. *See Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 900 (7th Cir. 2005). The motives of the council members, therefore, are potentially relevant to whether the ordinance was imposed on the basis of religion. *Cf. Grace United Methodist Church v. City of Cheyenne*, __ F.3d __, 2006 WL 1681321 (10th Cir. June 20, 2006) (Tenth Circuit noted that a RLUIPA claim raised issues concerning a city's secular motive in denying religious day care center, and district court found statements concerning motive of city to be relevant; Tenth

5

Circuit affirmed admission of the statements, although not determining whether they were admissible, in reliance on harmless error rule); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 764 (7th Cir. 2003) (city could be held liable under RLUIPA if the decisionmakers on a rezoning issue had an illicit anti-religious motive).

Defendants argue that under *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775 (10th Cir. 2005), *aff'd on rehearing at* __ F.3d __, 2006 WL 1681321 (10th Cir. June 20, 2006), an objective test is applied to Defendants' actions. Defendants' argument, however, fails in this case, because the objective test applied in *Grace* was found to be proper only after the Tenth Circuit determined that the law was facially neutral and generally applicable. *Id.* at *11. In so doing, the Court noted that a law's objective is to be discerned from the language as well as the context in which it was enacted. *Id.* at *10. Regarding Grace United's claims, the Court concluded:

> [T]here is no evidence in this case suggesting the ordinance was passed due to religious animus . . . . Grace United has not pointed to any evidence to support its conclusory allegation that the City specifically targeted religious groups or the Methodist denomination in its enforcement of the ordinance in this case. The Church does not suggest the Board of Adjustment made any statements amounting to anti-religious or anti-Methodist sentiment.

*Id.* at *21-*22. In the present case, Plaintiff alleges that the context in which the ordinance was passed, *i.e.*, that only churches would fall under the ordinance, indicates a religious animus. With this background and under the Tenth Circuit's reasoning, this Court cannot hold at this stage of litigation that the depositions of the city officials are irrelevant *per se*.

## 2. Deposition of City Council Members Concerning Action on the Applications

Plaintiff acknowledges that the city council's actions in rejecting the Plaintiff's applications were quasi-judicial. Response at 4. Plaintiff argues that such actions justify only qualified immunity.

6

However, the weight of authority affords absolute immunity to governmental bodies that consider and deny requests such as the applications submitted by Plaintiff in the present case. *E.g., Dotzel v. Ashbridge*, 438 F.3d 320, 325-26 (3rd Cir. 2006); *South Creek Assoc. v. Bixby & Assoc.*, 781 P.2d 1027, 1037 (Colo. 1989). The Colorado state courts agree that local governing bodies considering these types of issues are acting in a quasi-judicial capacity and reject requests for discovery from the decisionmakers. *E.g., Gilpin County Bd. of Equalization v. Russell*, 941 P.2d 257, 264 (Colo. 1997) (citing cases). This is especially true when, as here, Plaintiff raises no allegation of irregularity in the process that was provided (as opposed to the motive of the decisionmakers).

Again, of course, such immunities do not apply to requests for injunctive relief. Further, the allegations of the Plaintiff in this action may give rise to the "individualized-exemption exception" to the immunity defense. Under this exception, if "'individualized exemptions from a general requirement are available, the government may not refuse to extend that system to cases of religious hardship without compelling reason.'" *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1298 (10th Cir. 2004) (quoting *City of Hialeah*, 508 U.S. at 537). If the governmental body allows an individualized assessment that invites consideration of the particular circumstances, the exception applies. *Id.*

Here, Defendants have submitted the Cherry Hills Village Municipal Code, which authorizes variances based on such factors as hardship, the extent of the variance, and that "[t]he reasons set forth by the applicant justify the granting of the variance." Cherry Hills Village Municipal Code § 16-3-50. Even Defendants admit that "[u]nder the Code, the Board of Adjustment has discretion to make grant [sic] certain requests for variances." Reply at 5 n.7.

Assuming that Plaintiff intends to inquire into areas such as the factual record that Cherry Hills Village officials had before them in making the decision on Plaintiff's applications, as well as

7

statements made by such officials, the Court finds these matters directly relevant to whether Plaintiff

can support its claim of religions animus under Section (b)(2) of RLUIPA.  Certainly, government

officials do not ordinarily announce that their decision is based on an illegal consideration.  *Dailey*

*v. City of Lawton*, 425 F.2d 1037, 1039 (10th Cir. 1970).  But the Court believes that the Plaintiff

should be able to question the council members and other government officials to develop either its

claim of intentional discrimination or to raise an inference of discrimination.  *Sts. Constantine &*

*Helen Greek Orthodox Church, Inc.*, 396 F.3d 8 at 900.

Currently, the only assertion by the Plaintiff that approaches such an allegation concerns the

fact that the Ordinance applies only to churches in Cherry Hills Village, since the only facilities in

Cherry Hills Village with such seating are, in fact, churches.  Complaint at ¶36.  In their Motion,

Defendants have not disputed the allegation that churches are the only structures to which this

Ordinance in fact applies.  Nowhere has Plaintiff directed the Court to any factual allegation that in

denying the applications, Cherry Hills Village officials were acting upon an illegal motive.  And they

are unlikely to be able to do so if discovery against these officials is barred.  Thus, the Court

determines that motives of the government officials is relevant to Plaintiff's claims pursued under

RLUIPA.

C.     **Privilege**

1.     **Deliberative Process Privilege**

Even if the depositions are relevant, certain potential topics of examination may be privileged.

Unfortunately, Plaintiff does not provide to the Court *any* statement of the type of questions it would

ask the proposed deponents.  Without such a proffer, it is very difficult for the Court to determine

the extent to which the deliberative process privilege may apply.  Plaintiff only dances around this

8

salient bit of information by stating that in some cases, discovery into motive has been allowed (Response at 11 n.5), and that the relevance of a long laundry list of items testified to by defendant's officials in *Westchester Day School v. Village of Mamaroneck*, 417 F. Supp. 2d 477 (S.D.N.Y. 2006) is "self-evident" (Response at 11).  Nowhere does Plaintiff inform the Court of the areas of inquiry that it would make *in this case*.[2]

The presumption is that intrusion into legislative or executive motivation is to be avoided, *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 268 (1977) (noting that testimony by government officials in such circumstances will frequently be barred by privilege).[3] The deliberative process privilege "covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which governmental decisions and policies are formulated." *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (citation omitted). It "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.'" *Id.* (internal citations omitted).

For the deliberative process privilege to apply, Defendants must demonstrate that "the

---

[2]The Court will consider the list of items testified to in *Westchester Day School* as the potential topics of the depositions in this case.  These can be categorized as follows: (1) communications with others regarding the ordinance and Plaintiff's application; (2) communications with other city officials regarding the ordinance and application; (3) understanding of traffic studies, including the traffic study in this case; (4) stated reasons for denying the application; (5) any other means of protecting the city's interest; (6) and other uses in the city that implicate the stated reasons for denial and applications by other entities that implicate the stated reasons for denial.

[3]The *Arlington Heights* Court noted that testimony by government officials in such circumstances will frequently be barred by privilege.  429 U.S. at 268.

document is predecisional and deliberative, meaning the document must actually be related to the process by which policies are formulated." *Center for Biological Diversity v. Norton*, 336 F. Supp.2d 1155, 1159 (D.N.M. 2004) (internal quotations and citations omitted).  Here, the deliberative process privilege could potentially apply to categories 1, 2, 3 (to the traffic study in this case), 4, and 5.  General knowledge of traffic studies, other uses in the city that implicate the stated reasons for denial, and applications by other entities that implicate the stated reasons for denial do not implicate the deliberative process privilege.

Nevertheless, even if the privilege applies, it is not absolute.  "The Court must next determine whether the need for the evidence overrides the government's need to maintain confidentiality of the documents."  *Id.* at 1161.  The Court is to consider the following factors in making this determination: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplative policies and decisions.  *Id.*

If governmental misconduct in the deliberative process is at issue, many courts find this to weigh in favor of overriding the privilege under the preceding factors.  *See Newport Pac., Inc. v. County of San Diego*, 200 F.R.D. 628, 640 (S.D. Cal. 2001) (finding that "it is the very nature of the allegations and the role of the government in the litigation itself that tip the scales in favor of disclosure"); *Dominion Cogen, D.C. v. District of Columbia*, 878 F. Supp. 258, 268 (D.D.C. 1996) (holding that allegations of illegal political motive "raise questions of governmental misconduct and place the deliberative process itself directly in issue"); *United States v. Board of Educ.*, 610 F. Supp. 695, 700 (N.D. Ill. 1985) (allowing discovery of deliberative process because "the decision making process is not 'swept up into' the case, it is the case") (citations omitted).

Other courts take the position that the deliberative process privilege simply does not apply when governmental misconduct is the focus of the lawsuit.  *E.g.*, *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 134-35 (D.D.C. 2005) ("Under the government misconduct exception, there is no need to engage in a balancing test because the privilege does not apply at all."); *In re Sealed Case*, 121 F.3d 729, 737-38 (D.C. Cir. 1997) ("[T]he privilege disappears altogether when there is any reason to believe government misconduct occurred.").  Indeed, "[I]f the plaintiff's cause of action is directed at the government's intent . . . it makes no sense to permit the government to use the privilege as a shield.  For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination."  *In re Subpoena Duces Tecum Served on the Office of the Comptroller*, 145 F.3d 1422, 1424 (D.C. Cir. 1998), rehearing at 1998 U.S. App. LEXIS 24617 (clarifying that this principle applies when the subjective motives of governmental actors are at issue).[4]

Here, Plaintiff's cause of action arising under RLUIPA places the subjective motives of the government officials directly at issue.  Thus, as long as Plaintiff can set forth any evidence, including circumstantial evidence, of illegal motive, Plaintiff can overcome Defendants' claim for deliberative process privilege.  *Association of Relatives & Friends of AIDS Patients v. Regulations and Permits Admin.*, 740 F. Supp. 95, 103 (D.P.R. 1990).  Plaintiff alleges that the ordinance at issue applies only to churches, because the only structures in Cherry Hills Village with fixed seat auditoriums are churches.  Complaint at ¶ 36.  Moreover, Plaintiff alleges that after they filed their first application,

---

[4]The Tenth Circuit has not yet adopted either approach, and this Court need not determine which approach is appropriate because under either approach, a party can overcome the privilege by setting forth some evidence of improper motivations.  *United States v. Lake County Bd. of Comm'rs*, 233 F.R.D. 523, 526 (N.D. Ind. 2005).

Defendants placed a moratorium on granting such applications until after the ordinance had passed. Complaint at ¶ 31. Plaintiff further alleges that the ordinance allows for a mandatory reduction in parking requirements, which the city manager refused to allow. Complaint at ¶ 50. These allegations could support "some" circumstantial "evidence" of discriminatory motive. *Lake County Bd. of Comm'rs*, 233 F.R.D. at 526. This Court, therefore, finds that these allegations, coupled with RLUIPA's focus on the intent of the government officials, are sufficient to place the motives of the government officials at issue in this case. Thus, the deliberative process privilege does not apply.

### 2.   Mental Process Privilege

The mental process privilege encompasses the thoughts of government officials that are not communicated to others. *Lake County Bd. of Comm'rs*, 233 F.R.D. at 527. This privilege is "inextricably intertwined" with the deliberative process privilege. *Id.* The analysis of this privilege is the same as the deliberative process privilege, and it is likewise unavailable when a defendant's motive is central to the plaintiff's cause of action. *Id.*

In cases such as this, in which the Plaintiff's claim places the Defendants' motives directly at issue, the Plaintiff's ability to inquire "into unrecorded discussions and motivations is critical." *Id.* at 528-29. As the Fourth Circuit has noted, "municipal officials acting in their official capacities seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate . . . . It is only in private conversation . . . that open statements of discrimination are made." *Smith v. Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982) (explaining the importance of the deliberative and mental process of government officials to establish discriminatory intent under the Fair Housing Act).

12

**III.** **Conclusion**

Accordingly, for the reasons stated above, it is hereby **ORDERED** that the Defendants' Motion for Protective Order [Filed May 26, 2006; Docket #22] is **denied**.  Defendants' allegedly illegal motives are crucial to Plaintiff's ability to pursue a claim under Section (b)(2) of RLUIPA.

Dated at Denver, Colorado, this 19th day of July, 2006.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge